DETERMINED IN THE

## FOURTH DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

### DURING THE YEAR 1916.

---

**Marshall Rust and James D. Swift, copartners, trading as Rust & Swift, successors to Rust, Swift & Company, Appellees, v. Illinois Southern Railway Company, Appellant.**

### (Not to be reported in full.)

Appeal from the Circuit Court of Randolph county; the Hon. WILLIAM E. HADLEY, Judge, presiding. Heard in this court at the October term, 1915. Reversed and remanded. Opinion filed May 25, 1916. Rehearing granted and opinion filed January 8, 1917.

### Statement of the Case.

Petition by Marshall Rust and James D. Swift, copartners, trading as Rust & Swift, successor to Rust, Swift & Company, petitioners, against the Illinois Southern Railway Company, respondent, to enforce a mechanic's lien for work done under a construction contract. From a decree in favor of the petitioners for $16,265.35, and allowing certain set-offs to the respondent and refusing others, the latter appeals.

On March 23, 1911, defendant entered into a contract with Rust, Swift & Company, a copartnership,

composed of Marshall Rust, James D. Swift and W. H. Swift, contractors, to build a railroad incline in the Mississippi River on the Illinois side opposite Little Rock, Missouri, so that the cars of the railroad could be run onto a ferryboat and thereby transferred to its connecting track at Little Rock. In addition to the incline the contracting company was to construct a wooden trestle to connect that incline with the Illinois shore of the river, together with a drift fender and pile dike for the protection of said incline and trestle, from the waters of the river; and do all work required for the safety of the incline, to be built in compliance with plans and specifications prepared by Julius Pitman, the engineer in charge, or as the plans might be changed by him during the progress of the work. The contract provided that the contractor should not assign or transfer the same or sublet any part of it without the consent of the engineer in charge. In regard to the payments to be made for the work, the contract read as follows: "All payments under this contract shall be made upon certificates of the engineer in charge; said certificates to be made out and given in the following manner: About the first of each month, during the progress of the work, at the request of the contractor, the engineer shall cause approximate estimates to be made of the amount of the work then done and of the amount of material delivered and of the relative value thereof at the prices hereinbefore named; after the first monthly estimate is given, the contractor shall furnish satisfactory evidence to the engineer in charge that all bills for labor and material used during the preceding months have been paid. From the total value of the work done, as approximately estimated by the engineer, he shall deduct ten per cent. and all sums previously paid or rightfully retained under the contract, and he shall further deduct an amount sufficient in his opinion for the payment of all unpaid bills for labor and material, the remainder

after such deduction, he shall certify as then due to the contractor.''

Section 7 of the general stipulations contained in the contract gave the engineer in charge of the work certain authority as follows: ''To prevent all disputes and litigation, it is further agreed between the parties hereto that the engineer in charge shall in all cases determine the amount or quality of the several kinds of work which are to be paid for under this contract and he shall decide all questions which may arise relative to the execution of this contract on the part of the contractor and his estimates and decisions shall be final and conclusive.'' Section 14 of the general stipulations provided as follows: ''The contractor shall be held responsible for the safety and protection of every part of his work until its completion and acceptance and any injury to the work resulting from flood, scour, undermining of the river bank or bed, or other causes, before such acceptance must be made good by him.''

On May 12, 1913, a petition to enforce a lien upon the railroad and property of defendant for the amount claimed to be due the petitioners under their contract, and for material furnished and extra work done within six months prior to the filing of the petition, was filed by Marshall Rust and James D. Swift, copartners, under the firm name of Rust & Swift, as successors to Rust, Swift & Company, and the contract was set out therein *in haec verba.* W. G. Swift, who was a partner at the time the contract was entered into, had, at the time of the filing of the petition, parted with all his interest in the firm and contract.

STEWART, BRYAN & WILLIAMS and H. CLAY HORNER, for appellant.

JOHN J. BRENHOLT and W. M. WILLIAMS, for appellees.

MR. JUSTICE BOGGS delivered the opinion of the court.

## Abstract of the Decision.

1. MECHANICS' LIENS, § 212*—*when refusal to make retiring member of contracting firm party is harmless error.* Where a construction contract, which provided that it should not be assigned, transferred, or any part thereof sublet without the consent of the engineer in charge of the work, was let to a firm of contractors consisting of three partners, two of whom filed a petition to enforce a mechanic's lien after the retirement of the third partner from the firm, *held* that the refusal of the chancellor to order that such retiring partner be made a party to the proceeding was not reversible error since such change of partnership was not such an assignment or transfer as was contemplated by the contract, as it was shown that at the time the contract was entered into, the retiring partner had but a one-tenth interest in the firm and was not actually engaged in its business, and that, on his retirement, he relinquished all his interest therein and in the contract, and the petition showed on its face that the petitioners sued as successors of the original firm.

2. BUILDING AND CONSTRUCTION CONTRACTS, § 57*—*when allowance of set-offs by engineer is proper.* Where a contract for the construction of a railroad incline leading down to a river, and a wooden trestle and fender dike in the river, provided that the engineer in charge of the work should decide all questions which might arise relative to the execution of the contract and that his decision should be final, *held*, in a proceeding to enforce a mechanic's lien against the railroad, that the engineer had the power to determine whether there should be allowed the respondent as credit or set-off the expense to which it had been put in driving pilings in the fender dike, which had been partially destroyed by a flood after it was completed, and, as claimed by the contractor, accepted by the engineer, but before the entire work had been finished and accepted by the engineer, as well as for pilings swept away, lost, and for work done on the incline, and that his allowance of such set-off was proper, since as the contract further provided that when all the work should be fully completed, as testified to and accepted by the engineer, the latter should make a final estimate of the amount and value and deduct all sums previously paid or rightfully retained under the contract by the respondent, and the contract was an indivisible one and there could be no final acceptance of any part until the entire had been completed, and that the

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

court properly disallowed a set-off for labor and materials furnished by the respondent for the purpose of protecting the trestle and incline from injury from floods, as the labor and materials were not used in constructing or replacing any part of the work to be done by the contractor.

3. BUILDING AND CONSTRUCTION CONTRACTS, § 49*—*when damages for delay in performance of contract are waived.* In a suit by a railroad contractor to enforce a mechanic's lien for work done under a construction contract, *held* that it was proper to disallow the respondent as set-off a claim for damages for delaying the completion of the work, as the contract did not provide for such damages, but provided that, on the contractor's failure to construct the work in accordance with the contract, the railroad could, upon giving notice to the contractor, take over the work or any part thereof completed and deduct the cost thereof from the amount that otherwise would be due the contractor, but the railroad gave no such notice, and did not complete the work itself, and otherwise by conduct waived any claim for such damages.